UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
ROBINSON NARANJO-RAMIREZ,

           Movant,

-against-

UNITED STATES OF AMERICA,

           Respondent.
-----------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-CV-04987 (SLT)

**TOWNES, United States District Judge:**[1]

  In July 2008, Movant Robinson Naranjo-Ramirez was convicted, upon his plea of guilty, of a single count of conspiracy to import heroin. The Court sentenced him to 150 months' imprisonment. Having unsuccessfully appealed, Movant now moves to vacate, set aside, or correct his sentencing pursuant to 28 U.S.C. § 2255(a), alleging that his trial attorney provided ineffective assistance of counsel in stipulating to a two-level aggravating role enhancement under U.S.S.G. § 3B1.1 despite the Government's promise not to seek such an enhancement. For the reasons set forth below, the motion is denied.

## BACKGROUND

**The Underlying Criminal Case**

  On March 20, 2006, Movant was indicted in this district on a single count of conspiracy to import one kilogram or more of a substance containing heroin. The indictment stemmed from an investigation undertaken by agents of the Bureau of Immigration and Customs Enforcement, which revealed that Movant was the head of a drug trafficking organization engaged in importing narcotics into the United States from Colombia and Brazil. Movant was arrested in Colombia on March 27, 2006, and detained at the notorious, high-security prison in Combita, Colombia, for approximately eleven months before the Colombian courts approved the United States' request

---

[1] The Court gratefully acknowledges the assistance of legal intern, Jenna S. Smith of the University of Pennsylvania Law School, in the preparation of this Memorandum and Order.

for his extradition. Movant was extradited on February 19, 2007, and was arraigned in this district on the following day.

**The Plea of Guilty**

After Movant was arraigned, he entered into plea negotiations with the Government, then represented by AUSA Mary K. Barr. During the course of those negotiations, AUSA Barr stated that the Government subsequently would not advocate for the four-level aggravating role enhancement under U.S.S.G. § 3B1.1. Although the plea negotiations ultimately proved unsuccessful, the Government took the position that it "would not be just" to advocate for the aggravating role enhancement in light of AUSA Barr's assurances to the contrary. Transcript of Jan. 15, 2009, Proceedings, p. 7.

On July 10, 2008, Movant appeared before this Court and pled guilty to the only count in the indictment. Transcript of July 10, 2008, Plea ("Plea Transcript"), p. 11. There was no plea agreement between the parties, but the Government prepared a sentencing sheet which estimated a base level offense of 36 with a three-level downward adjustment for acceptance of responsibility. Sentencing Sheet, July 10, 2008, p. 2. In keeping with AUSA Barr's promise, the sentencing sheet did not include any aggravating role enhancement for Movant's leadership role in the commission of the offense. *Id.*

During the plea proceedings, the Court explained that if Movant pled guilty, his term of imprisonment would be somewhere between the minimum term of ten years and the maximum term of life imprisonment. Plea Transcript, p. 12. The Court further explained that the Government's estimate of the guidelines range corresponded to a range of imprisonment of 135 to 168 months, but that the Government's estimate could be wrong. *Id.* at 14. Movant confirmed that he understood that the sentencing Judge would not be bound by the Government's estimate,

and that no one had made any promises to him about what his sentence would be. *Id.* at 14-15. Movant also confirmed that he had spoken to his attorney about the advisory guidelines and understood that they were not mandatory. *Id.* at 13. The Court accepted Movant's guilty plea.

Prior to sentencing, the Probation Department prepared a presentence report which calculated Movant's total offense level at 37—not 33, as estimated by the Government. Like the Government, the Probation Department calculated the base offense level at 36 under U.S.S.G. § 2D1.1, based on the belief that the offense involved 13.7274 kilograms of heroin. However, unlike the Government, the Probation Department included a four-level aggravating role enhancement under U.S.S.G. §3B1.1 on the ground that Movant was the leader of a drug-trafficking scheme involving at least 11 participants. The Probation Department then reduced the offense level by three levels for acceptance of responsibility, yielding a total offense level of 37.

In their pre-sentencing submissions, both the defense and the Government argued for an adjusted offense level of 31. The parties agreed that the quantity of heroin attributable to Movant was 7.7274 kilograms—the weight of the heroin actually seized during the investigation. This quantity corresponded to a base level of 34. *See* U.S.S.G. § 2D1.1(c)(3). The parties further agreed that a three-level reduction for acceptance of responsibility was appropriate. The Government did not advocate for an aggravating role enhancement, noting that the parties agreed that "absent a *Fatico* hearing, facts justifying an enhancement ... under U.S.S.G. § 3E1.1 have not been proved." Letter to Hon. Sandra L. Townes from AUSA Justin D. Lerer dated Jan. 14, 2009.

At sentencing on January 15, 2009, the Court focused on resolving the conflict between the Probation Department's guideline calculations and those of the parties. The Court agreed to amend the presentence report to reflect the quantity of heroin agreed upon by the parties, and to

and that no one had made any promises to him about what his sentence would be. *Id.* at 14-15. Movant also confirmed that he had spoken to his attorney about the advisory guidelines and understood that they were not mandatory. *Id.* at 13. The Court accepted Movant's guilty plea.

Prior to sentencing, the Probation Department prepared a presentence report which calculated Movant's total offense level at 37—not 33, as estimated by the Government. Like the Government, the Probation Department calculated the base offense level at 36 under U.S.S.G. § 2D1.1, based on the belief that the offense involved 13.7274 kilograms of heroin. However, unlike the Government, the Probation Department included a four-level aggravating role enhancement under U.S.S.G. §3B1.1 on the ground that Movant was the leader of a drug-trafficking scheme involving at least 11 participants. The Probation Department then reduced the offense level by three levels for acceptance of responsibility, yielding a total offense level of 37.

In their pre-sentencing submissions, both the defense and the Government argued for an adjusted offense level of 31. The parties agreed that the quantity of heroin attributable to Movant was 7.7274 kilograms—the weight of the heroin actually seized during the investigation. This quantity corresponded to a base level of 34. *See* U.S.S.G. § 2D1.1(c)(3). The parties further agreed that a three-level reduction for acceptance of responsibility was appropriate. The Government did not advocate for an aggravating role enhancement, noting that the parties agreed that "absent a *Fatico* hearing, facts justifying an enhancement ... under U.S.S.G. § 3E1.1 have not been proved." Letter to Hon. Sandra L. Townes from AUSA Justin D. Lerer dated Jan. 14, 2009.

At sentencing on January 15, 2009, the Court focused on resolving the conflict between the Probation Department's guideline calculations and those of the parties. The Court agreed to amend the presentence report to reflect the quantity of heroin agreed upon by the parties, and to

reflect a base offense level of 34, rather than 36. Transcript of Jan. 15, 2009, Proceedings, p. 3. However, the Court insisted on scheduling a *Fatico* hearing to determine whether an aggravating role enhancement was appropriate, noting that it had an obligation to consider "the history and characteristics of this defendant as well as the circumstances of this offense ...." *Id.* at 7. The Government repeatedly stated that it had agreed not to advocate for an aggravating role enhancement, but conceded that it had enough evidence to proceed with the *Fatico* hearing. *Id.* at 3-5, 7.

The *Fatico* hearing never took place. At an appearance in mid-May 2009, the parties agreed that a two-level aggravating role enhancement was warranted under U.S.S.G. § 3B1.1, and the Court directed that the presentence report be amended to reflect this adjustment. On June 11, 2009, however, Movant himself wrote this Court a letter expressing his dissatisfaction with the agreement. Movant stated that he felt the two-level enhancement was "unfair" since he had pled guilty with the understanding that the Government would not seek an enhancement for his leadership role. Letter to Hon. Sandra L. Townes from Robinson Naranjo-Ramirez dated June 11, 2008, p. 2. Movant did not request any particular relief aside from "mercy and leniency." *Id.* at 3.

At the start of the sentencing proceedings on July 31, 2009, the Court read from Movant's June 11, 2009, letter. The Court interpreted the letter as "objecting to the two level enhancement," and opined that a *Fatico* hearing was necessary in light of this objection. Transcript of July 31, 2009, Sentencing ("Sentencing Transcript"), p. 4. Defense counsel urged a different interpretation, asserting that Movant's letter had been "inartful" and that he had not "meant to convey" a desire to abandon the agreement. *Id.* Defense counsel noted that both he and another defense attorney had advised Movant not to proceed with the *Fatico* hearing, that

4

Movant had accepted that advice, and that it was not Movant's "intention ... to relitigate the issue of the two level enhancement." *Id.* at 5.

After giving Movant the chance to discuss his options with defense counsel, Movant announced through his attorney that he was prepared to withdraw the July 11, 2009, letter. Sentencing Transcript, p. 8. The Court then questioned Movant directly:

> The Court: Your attorney tells me that you wish to withdraw that letter; is that correct?
>
> The [Movant]: That is correct, yes.
>
> The Court: And you know we had a hearing on the role in this case which is not a role that was advocated by the government, it is a role that was determined under the guidelines pursuant to the facts as they have been stated in the presentence investigation report, you understand that?
>
> The [Movant]: Yes.
>
> The Court: All right. And we had at one point when you objected to the role at the time it was a four level enhancement, we had scheduled a hearing, a *Fatico* hearing and that can be scheduled again if you are not satisfied, do you understand that?
>
> The [Movant]: Yes.
>
> The Court: And do you wish to go forward with a hearing or to leave this as we have discussed on the record with a total offense level of 33?
>
> The [Movant]: No. If you mean do I want a *Fatico*, no.
>
> The Court: All right. And that includes you understand, the two level enhancement for role in the offense, leadership role.
>
> The [Movant]: Yes. (Sentencing Transcript, p. 8-9.)

The Court then proceeded to pronounce sentence. First, the Court noted that Movant was in Criminal History Category I, with a total offense level of 33. Sentencing Transcript, p. 14. Then, using the Sentencing Table and Fine Table set forth in the United States Sentencing Guidelines, the Court determined that the imprisonment range was 135 to 168 months and that

5

the fine range was $20,000 to $4 million. *Id.* The Court expressly rejected Movant's request for a downward departure and sentenced him to 150 months' imprisonment—near the middle of the guidelines range. *Id.* at 15. The Court waived the fine. *Id.*

Movant appealed his conviction. In his appellate brief, Movant argued that his sentence was unreasonable because the district court lacked the authority to order the *Fatico* hearing. In addition, Movant argued that the district court erred in failing to downwardly depart from the guidelines range in light of the harsh conditions that Movant had endured at the Colombian prison where he was detained before extradition.

In a summary order issued on November 23, 2010, and amended on December 2, 2010, the Second Circuit rejected both of these arguments and affirmed Movant's conviction. *United States v. Naranjo-Ramirez*, 402 Fed. Appx. 576 (2d Cir. 2010). With respect to the first argument, the Second Circuit noted that the Government's promise to refrain from arguing for a leadership enhancement did "not forbid the government from responding to a specific request of the Court by 'supplying the Court with the law and the facts.'" *Id.* at 578 (quoting *United States v. Riera*, 298 F.3d 128, 135 (2d Cir. 2002) (internal citations omitted). Noting that it was within the power of the district court to direct the Government to provide pertinent information about the facts of the case, the Second Circuit held that the Court did not commit a procedural error by ordering a *Fatico* hearing. *Id.*

With respect to Movant's second argument, the Second Circuit acknowledged that presentence confinement conditions could "in appropriate cases be a permissible basis for downward departures," *Naranjo-Ramirez*, 402 Fed. Appx. at 578 (quoting *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001)), and that other district courts have in fact "invoked the unusually difficult conditions in the Combita prison in granting downward departures." *Id.*

(quoting *United States v. Torres*, No. 01 CR 1078, 2005 WL 2087818 at *2 (S.D.N.Y. Aug. 30, 2005)). However, the Second Circuit noted that the Court was "under no obligation to depart from the Guidelines on the basis of [Movant's] allegedly harsh presentence confinement conditions." *Id.* The Second Circuit also rejected Movant's argument that the Court erred in failing to consider the harsh conditions at the Combita prison. The Second Circuit held that Movant had failed to overcome the "strong presumption that a sentencing judge has taken properly presented arguments into account and considered all the § 3553(a) factors in the course of imposing a sentence." *Id.* (quoting *United States v. Fernandez*, 443 F.3d 19, 34-35 (2d Cir. 2006)).

**The Instant Motion**

Movant now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, alleging that his trial attorney provided ineffective assistance of counsel in violation of his Sixth Amendment rights. Movant is proceeding *pro se*, and the Court is mindful that "submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis added) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

In order to establish ineffective assistance of counsel, Movant must satisfy the two prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The standard requires that Movant first "show that counsel's performance was deficient," then demonstrate that counsel's deficient performance prejudiced Movant. *Id.* With respect to the first prong of the *Strickland* standard, Movant argues his counsel erred by stipulating to the two-level enhancement rather than requesting specific performance of the Government's agreement not to seek an aggravating role enhancement. Movant's Memo, p. 5-6. This argument is based on Movant's belief that the

7

Government itself prepared the "sentencing memorandum" which advocated a four-level aggravating role enhancement in disregard of AUSA Barr's representation. *Id.* Relying on *Santobello v. New York*, 404 U.S. 257 (1971)—a case which holds that specific performance is among the remedies available to a defendant when the Government violates a plea agreement—Movant asserts that his attorney could have insisted on eliminating the aggravating role enhancement. *Id.* Movant argues that his attorney not only failed to demand specific performance, but stipulated to the two-level enhancement without Movant's consent. *Id.*

With respect to the second prong, Movant contends that absent Counsel's error, he would have been eligible for the "safety valve." Movant's Memo, p. 11. The so-called "safety valve" is § 18 U.S.C. § 3553(f), which "provides that district courts may impose sentences below the statutory mandatory minimums set forth in 21 U.S.C. §§ 841, 844, 846, 960, and 963, if certain factors are present." *United States v. Holguin*, 436 F.3d 111, 115 (2d Cir. 2006). Those "factors" include, among other things, that the defendant "was not an organizer, leader, manager, or supervisor of others in the offense ...," 18 U.S.C. § 3553(f)(4). Movant argues that the "safety valve" could have reduced his sentence to 87 months, "which is far ... better than the 150 months he is currently serving." *Id.*

In a 22-page letter dated June 4, 2012 (the "Response"), the Government addresses each of Movant's arguments. With respect to the contention that defense counsel committed error by stipulating to the two-level enhancement, the Government argues that this stipulation was a strategic decision and that "'sound trial strategy' does not constitute ineffective assistance." Response, p. 14, 16 (quoting *Strickland*, 466 U.S. at 690). The Government also argues that, even if Movant could establish his counsel committed error, he could not establish a reasonable probability that the error affected the outcome of his case. *Id.* at 20-21.

In a four page letter dated July 2, 2012 (the "Reply"), Movant largely repeats the argument raised in his moving papers. Movant again argues that his trial counsel's representation was deficient because he failed to request that Movant "be sentenced without any leadership role in the offense as per the verbal agreement" with the Government. Reply, p. 2. However, the Reply also suggests that Movant's counsel should have attempted to withdraw Movant's guilty plea when the Government allegedly violated the agreement which "enticed" Movant into pleading guilty. *Id.* In the alternative, the Reply requests that the Court hold an evidentiary hearing "where the records will be fully develop[ed]." *Id.* at 4.

## DISCUSSION

Section 2255(a) of Title 28 of the United States Code provides, in pertinent part:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or ... is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

"[A] motion under § 2255 is not a substitute for direct appeal." *Sapia v. United States*, 433 F.3d 212, 217 (2d Cir. 2005). Ordinarily, a defendant must exhaust his direct appeal before filing a motion pursuant to § 2255. *United States v. Vilar*, 645 F.3d 543, 546 (2d Cir. 2011). However, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

**Ineffective Assistance of Counsel**

The Sixth Amendment of the United States Constitution ensures that "in all criminal prosecutions, the accused shall... have the Assistance of Counsel" for his defense. U.S. Const. amend. VI. Although the Sixth Amendment does not expressly require that counsel be

"effective," courts have found that the right to counsel inherently implies the right to effective assistance. As the Second Circuit has noted, the very "purpose of the Sixth Amendment guarantee of the 'Assistance of Counsel' ... is to ensure that defendants have effective assistance of counsel." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (internal quotations and citations omitted).

In *Strickland, supra*, the Supreme Court established a two-pronged test for deciding ineffective assistance claims. With respect to the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In order to satisfy the first prong, "[a] convicted defendant ... must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. "[A] petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy." *Singleton v. Duncan*, No. 03-CV-561, 2006 WL 73734, at 14* (E.D.N.Y. Jan. 10, 2006) (citing *Jones v. Barnes*, 463 U.S. 745, 752 (1983)). Indeed, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Moreover, the burden is on the defendant to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955) (internal quotations omitted)).

With respect to the second prong, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Supreme Court defines "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Id.* Further, "[t]he level of prejudice the defendant need demonstrate lies between prejudice that 'had some

conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" *Lindstadt v. Keani*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693). Even "professionally unreasonable" errors by counsel do not "warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Ultimately, "[t]he relevant inquiry focuses 'on the fundamental fairness of the proceeding whose results are being challenged.'" *Bien v. Smith*, 546 F. Supp. 2d 26, 51 (E.D.N.Y. 2008) (quoting *Strickland*, 466 U.S. at 696).

In this case, Movant has not established the first prong of the *Strickland* test. Movant argues that his attorney erred in two respects. First, Movant claims that the Government breached its agreement not to seek an aggravating role enhancement, that his attorney could have insisted on "specific performance," and that this would have resulted in eliminating the aggravating role enhancement altogether. Second, Movant asserts that, instead of insisting on specific performance, defense counsel stipulated to the two-level enhancement without Movant's consent.

Both of these arguments are entirely inconsistent with the facts. The Government never breached its agreement not to seek an aggravating role enhancement. Contrary to what Movant may believe, the Government did not author the presentence report which recommended the four-level enhancement, the Probation Department did. Sentencing Transcript, p. 4. The Government never advocated for an aggravating role enhancement, even after AUSA Barr was replaced by AUSA Justin D. Lerer. Transcript of Jan. 15, 2009, Proceedings, p. 4-7. Absent a violation of the Government's promise, defense counsel had no basis for seeking specific performance.

11

Even if the Government had violated its promise, specific performance would not have eliminated the *Fatico* hearing. The Court *sua sponte* ordered the *Fatico* hearing pursuant to 18 U.S.C. § 3553(a). The Government, which admitted that it had evidence to prove Movant's leadership role, could not refuse to present evidence in support of that enhancement when directed to do so by the Court.

In light of the Court's insistence on a *Fatico* hearing, Movant's attorney had only two options: stipulate to the two-level enhancement or proceed with the *Fatico* hearing. Movant has not adduced any evidence to suggest that defense counsel's advice that he stipulate to the two-level enhancement was unreasonable. *See Strickland*, 466 U.S. at 689 (there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ...."). Indeed, the decision to stipulate to the two-level enhancement rather than risk a four-level enhancement was not only reasonable, but strategic. *See Aulet v. United States*, No. 01 Civ. 2046 (JSM), 2001 WL 910404 at *1 (S.D.N.Y. Aug 13, 2001) ("it is reasonable to assume that in negotiating a plea agreement, defense counsel made tactical choices to stipulate certain Guideline factors in exchange for the Government's agreement not to press for a higher Guideline range. Counsel's judgment in this regard was well within the range of tactical strategy that is left to the professional judgment of defense counsel ...."). Counsel's strategic decision does not constitute substandard representation.

Moreover, Movant himself made the decision to forego the *Fatico* hearing and stipulate to the two-level enhancement. To be sure, Movant wrote the Court a letter prior to sentencing in which he implied that he did not want to stipulate. Letter to Hon. Sandra L. Townes from Robinson Naranjo-Ramirez dated June 11, 2008, p. 2. However, at sentencing, Movant expressly

withdrew that letter and agreed to accept the two-level enhancement instead of proceeding with the *Fatico* hearing:

> The Court: And do you wish to go forward with a hearing or to leave this as we have discussed on the record with a total offense level of 33?
>
> The [Movant]: No. If you mean do I want a *Fatico*, no.
>
> The Court: All right. And that includes, you understand, the two level enhancement for role in the offense, leadership role.
>
> The [Movant]: Yes. (Sentencing Transcript, p. 9.)

## CONCLUSION

For the reasons set forth above, Movant has not adduced evidence to establish that his trial counsel's performance was deficient in any respect. Since Movant has not made out the first prong of the *Strickland* standard, the Court need not consider the second prong. Movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied in its entirety.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Court

Dated: July 25, 2017
Brooklyn, New York